IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

BRANDON M. BLACKMON, by and )
through his Conservator, )
Daniel J. Sevart, )
                                )
                     Plaintiff, )    **CIVIL ACTION**
                                )
v.                              )    No. 05-1030-MLB
                                )
MARGO CRILE, et al.,            )
                                )
                    Defendants. )
                                )

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant Janet Schalansky's motion for reconsideration (Doc. 54); and

2. Plaintiff's response (Doc. 55).

By its order of January 30, 2006 (Doc. 52), this court denied Janet Schalansky's motion to dismiss based upon qualified immunity. Schalansky's motion was predicated on the assertion that plaintiff's allegations regarding her were conclusory. The court disagreed, noting:

> Schalansky argues that Blackmon has failed to allege any specific, factual allegations to support a claim against her. Blackmon has alleged that Schalansky, Deputy Secretary of SRS, insisted that he be placed at St. Francis despite her actual knowledge of numerous professionals opining that such placement would be harmful. Moreover, Blackmon has alleged that Schalansky had direct and specific knowledge that he would be in danger at St. Francis because of the violent and aggressive nature of its residents. Blackmon's allegations, if true, are sufficient to state a section 1983 claim. Blackmon has clearly alleged that Schalansky violated his clearly established right to be free from harm while placed in an institution and the Tenth Circuit has held that officials will be liable they make a placement that "they know or suspect to be dangerous to

>the children." Yvonne L., 959 F.2d at 892-93.  Blackmon has also sufficiently alleged that he was harmed at St. Francis by other residents.

In her caustically worded motion for reconsideration, Schalansky's lawyer claims that the court ". . . obviously misapprehended Ms. Schalansky's position **and** the facts **and** the applicable law."  Schalansky's lawyer proceeds to reassert his arguments regarding the conclusory nature of plaintiff's allegations, claiming that "[i]t is a sad irony that this Court makes a fact of a [former] State official's 'specific knowledge' without 'specifics'.  There are no specifics on how, when, where, what or why for this assumed 'knowledge.'" It is significant that Schalansky's lawyer never attempts to explain how the allegations are conclusory.

At the conclusion of the court's January 30 memorandum and order, it cited Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992), which sets forth the requirements for a motion to reconsider. Schalansky's motion simply regurgitates arguments she made in her motion to dismiss and reply, along with citations to the same case authority.  Thus, Schalansky's motion for reconsideration ignores the requirements of Comeau and could be denied for that reason alone.  Nevertheless, the court has considered Schalansky's motion and denies it for the following additional reasons.

After she was served with plaintiff's original complaint, Schalansky moved for a more definite statement asking that plaintiff be required ". . . to timely plead specific, nonconclusory allegations sufficient to establish a cause of action . . . ."  (Doc. 30 at 5).  Plaintiff opposed the motion and

-2-

Schalansky replied (Docs. 36 and 38). The court granted Schalansky's motion by minute order (Doc. 39) filed April 29 and plaintiff complied (Doc. 41). In addition, on April 21, plaintiff filed a first amended complaint (Doc. 37). Thereafter, Schalansky filed her motion to dismiss based on qualified immunity. As previously noted, the thrust of Schalansky's motion to dismiss was that despite the allegations of the first amended complaint <u>and</u> the contents of plaintiff's more definite statement, the allegations regarding Schalansky remained conclusory.

Although Schalansky has repeatedly asserted, and continues to assert, that plaintiff's claims against her are entirely conclusory, it does not appear that she has given much, if any, thought to what a conclusory allegation actually is. A good definition appears in <u>Day v. Fallon Community Health Plan, Inc.</u>, 917 F. Supp. 72, 75 (D. Mass. 1996):

> In attempting to distinguish that "often blurred" line between sufficient facts and insufficient conclusions, this Court is guided by the "general parameters" set out in <u>Dartmouth Review [v. Dartmouth College</u>, 889 F.2d 13 (1st Cir. 198)] at 16:
>
>> Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called "inferences from", the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

If Schalansky's lawyer requires a close-to-home objective example of a conclusory allegation, his attention is directed to <u>Delattore</u>

-3-

v. Minner, 238 F. Supp. 2d 1280 (D. Kan. 2002).

Schalansky apparently needs to be reminded that she has chosen the atypical vehicle of a motion to dismiss, rather than a motion for summary judgment, to assert her claim of qualified immunity. In its memorandum and order denying her motion to dismiss, the court cited Peterson v. Jensen, 371 F.3d 1199, 1201-02, (10th Cir. 2004) for its statement that "[a]lthough summary judgment provides the typical vehicle for asserting a qualified immunity defense, [the court] will also review this defense on a motion to dismiss" but will "not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" The court also noted that there is no longer a "heightened pleading" requirement when considering an assertion of qualified immunity.  Finally, the court cited the two step framework for reviewing a qualified immunity defense:  "[w]hether plaintiff's allegations, if true, establish a constitutional violation and, if so, whether the right allegedly violated was clearly established at the time of the conduct at issue."

Although Schalansky asserts that the court "obviously misapprehended" the applicable law, her motion to reconsider does not take issue with any of these well-established legal principles. She also does not dispute the court's determination that Tenth Circuit law holds that foster children have a clearly established right to protection while in foster care and that this right existed at the time of the violations alleged by plaintiff.  She does not take issue, for obvious reasons, with the court's

-4-

statement that when considering a claim of qualified immunity by a state defendant, a plaintiff's allegations must go beyond a claim that the defendant was in charge of other state actors who actually committed the violation. Instead, the plaintiff must establish a deliberate, intentional act by the supervisor to violate Constitutional rights, which may be satisfied by showing that the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance. (Doc. 52 at 9-11). All this begs the question: what law did the court misapprehend?

In his first amended complaint, plaintiff has alleged that Schalansky was deputy secretary of SRS at all relevant times. This allegation is specific and does not appear to be in dispute. The first amended complaint alleges in great detail how, when, and by whom plaintiff was improperly treated by various employees of SRS while in SRS's care. For example, in May 1997, plaintiff was sent to St. Francis Academy in Salina, Kansas. This, too, apparently is not in dispute. The first amended complaint then alleges that:

> 95. Sometime after Dr. Flanders' evaluation of Blackmon on 03/25/97, but before Blackmon was sent to St. Francis Academy in Salina on 05/07/97, Teresa Markowitz, SRS's Commissioner for Children and Family Services directly contacted Rev. Thomas W. Campbell, then Vice-President of St. Francis Academy, while Rev. Campbell was in his satellite office in Hays, Kansas. Also present during the ensuing telephone conversation was Allen Seltzer, M.D. Markowitz asked Rev. Campbell if he was familiar with Blackmon's case, and he advised in the affirmative, stating he had been briefed by Dr. Flanders and Dr. Seltzer, who had already determined that Blackmon would be best served by being admitted to Niles or Crittenton, out-of-state facilities which treated pre-adolescents. Ms. Markowitz advised Rev. Campbell that SRS did not have the funds for out-of-state placement and that St. Francis was the best available

-5-

      program in Kansas because it provided Level VI services and a sexual offender program. Both Dr. Seltzer and Rev. Campbell advised Ms. Markowitz that St. Francis Academy could not take Blackmon because of a lack of adequate staff to guarantee his safety in a facility populated with much older offenders. Rev. Campbell also advised Ms. Markowitz that their licensure standards and facility standards did not permit the admission of any child under the age of twelve (12), and that St. Francis did not want to seek a "waiver" of the licensing restriction. Ms. Markowitz responded by advising that she would assist in obtaining a "waiver" from the Kansas Department of Health and Environment ("KDHE"). Additionally, Rev. Campbell and Dr. Seltzer expressed reservations about whether Blackmon was actually a sex offender, and Ms. Markowitz stated that that issue was closed, as the court had "convicted" him of rape and that SRS was going to place him in residential treatment, and that facility was going to be St. Francis Academy. Rev. Campbell reiterated that St. Francis Academy did not have the staffing ratio necessary to protect such a young boy such as Blackmon, at which time Ms. Markowitz became threatening and advised Rev. Campbell that if St. Francis wanted to maintain a "good working" relationship with SRS in the atmosphere of the "privatization" of juvenile services–with Ms. Markowitz reminding Rev. Campbell that St. Francis Academy was but one of many institutions applying for contracts with SRS to provide such services–that St. Francis Academy would admit Blackmon. Rev. Campbell and Dr. Seltzer still expressed serious reservations about accepting Blackmon at St. Francis Academy, but advised that if there were no other facilities where Brandon could receive service they would consider a placement, conditioned on SRS providing additional per diem funding in Blackmon's case for "one-on-one" staffing. Ms. Markowitz assured Rev. Campbell that she was sure same could be arranged.

      96. Sometime later, David Lang, Director of Admissions for St. Francis Academy, and Rev. Campbell attended a meeting with Ms. Markowitz and other SRS representatives in Central Kansas, at which the Blackmon case was again addressed. **Ms. Markowitz told Rev. Campbell and Mr. Lang that she and Janet Schalansky, Deputy Secretary of SRS, felt it was absolutely imperative that Blackmon be accepted by St. Francis Academy.** According to Rev. Campbell, the tenor of Ms. Markowitz' statements was such that both Rev. Campbell and Mr. Lang believed that St. Francis Academy was being sent the message that "you had better do this, or else."

(Doc. 37 at ¶¶ 95 and 96) (emphasis supplied).

These allegations are not conclusory by any measure. They allege that Schalansky, in her capacity as deputy secretary of SRS, felt it was absolutely imperative that Blackmon be accepted by St. Francis Academy; in other words, a deliberate and intentional act by a supervisor. It is further alleged that Reverend Campbell told Ms. Markowitz that St. Francis did not have adequate staff to guarantee plaintiff's safety in a facility populated with much older offenders. Markowitz is alleged to have informed Reverend Campbell that if St. Francis wanted to maintain a "good working" relationship with SRS, it would admit plaintiff. These specific allegations, coupled with the reasonable inferences that Schalansky and Markowitz were communicating and that Schalansky was aware of the situation, are sufficient to satisfy the knowledge element. See Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002), cert. denied, 538 U.S. 999 (2003) (The court must view all reasonable inferences in favor of the plaintiff.) The first amended complaint goes on to allege things which occurred to plaintiff at St. Francis which any objective person would consider a violation of plaintiff's clearly established right to protection in the care of a state agency.

The first amended complaint also avers that:

> 172. Markowitz and Schalansky are liable under 42 U.S.C. § 1983, either by means of deliberate indifference to known dangers of which they were apprised or reasonably should have known with respect to their placements of Blackmon, or by abdication of their professional
> responsibilities to supervise and monitor their subordinates' placements of Blackmon respecting the affirmative link between their personal participation, exercise of control or direction, failure to supervise, or knowledge and acquiescence to their

-7-

>   subordinates' unlawful conduct respecting Blackmon. Markowitz and Schalansky, acting under color of state law, thereby caused Blackmon to suffer physical and mental harm from other, older and larger detainees at St. Francis Academy; and, caused Blackmon to suffer physical and mental injury from his very presence in the unreasonably fearful and age inappropriate milieu into which this eleven-year-old was thrust at St. Francis Academy; and, after being made aware of Blackmon's case and taking a primary role in his placement at St. Francis Academy, failed to exercise proper supervisory and management control over SRS employees, including Crile, and the private service providers with which she contracted for Blackmon's placement, custody, care and treatment, in respect to his placements after St. Francis Academy, including at JDF, Providence Medical Center, foster care with Jeanette Smith (under the auspices of The Farm), psychotherapy at Wyandotte County Mental Health and at Rainbow Mental Health.

(Id. at ¶ 172). These allegations arguably are conclusory and if they were the only allegations naming Schalansky, the court might be more receptive to Schalansky's argument. But clearly, they are merely a summary of the much more factual and specific allegations previously noted.

In his more definite statement, plaintiff makes the following additional assertions:

>   a. Schalansky had specific and direct knowledge that St. Francis Academy was not licensed to accept a boy of Blackmon's age.
>
>   b. Schalansky had specific and direct knowledge that all professional evaluators, including those at St. Francis Academy, agreed that St. Francis Academy was an inappropriate placement for Blackmon due to his age and multiple other factors and that alternative and age appropriate treatment facilities were available.
>
>   c. Despite Schalansky's specific and direct knowledge that St. Francis Academy was not licensed to accept a boy of Blackmon's age and that it was an inappropriate placement for Blackmon, Schalansky directed Markowitz and other SRS employees to force St. Francis Academy to accept Blackmon despite St. Francis Academy's opposition to Blackmon's placement.

-8-

      d. Schalansky had direct and specific knowledge that given the older, violent and sexually aggressive nature of the residents at St. Francis Academy, it was likely that Blackmon would be in clear and present danger if placed at St. Francis Academy by SRS.

      e. Despite Schalansky's specific and direct knowledge that St. Francis Academy was not licensed to accept a boy of Blackmon's age and that it was an inappropriate placement for Blackmon, Schalansky directly intervened to force Blackmon's inappropriate placement at St. Francis Academy with the threat of a loss of state funded business if St. Francis Academy did not reverse its position that the placement was not in Blackmon's best interest.

      f. Schalansky was directly and actively involved in this age and program inappropriate placement and such conduct represents a violation of all standards of professional judgment.

      g. Schalansky directed and supervised the placement of Blackmon in an age and program inappropriate placement at St. Francis Academy which led to the assault by an older, sexually aggressive St. Francis Academy resident on 11-year old Blackmon.

(Doc. 41 at 3-5). These allegations reinforce the sufficiency of plaintiff's claims.

In this district, as everywhere else in the federal system, a Rule 12(b)(6) motion is judged according to the following standard:

> In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts in the amended complaint and views them in a light most favorable to plaintiff. The Court makes all reasonable inferences in favor of plaintiff, and liberally construes the pleadings. The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on material elements that must be proved. Defendant bears the burden to show that plaintiff cannot prove any set of facts which would entitle her to relief.

Dolquist v. Heartland Presbytery, 342 F. Supp. 2d 996, 999 (D. Kan. 2004) (internal citations omitted). By this universally-recognized

-9-

standard, plaintiff's allegations regarding Schalansky are sufficient to overcome Schalansky's motion to dismiss based on qualified immunity.  The validity of plaintiff's contentions may, or may not, ultimately be supported through discovery.  The claims may, or may not, ultimately survive motion for summary judgment.  But that is not the posture of the case and it is long past time for Schalansky and her lawyer to recognize this and move on.  Schalansky has more than sufficient information to respond to the complaint and otherwise prepare a defense.

Accordingly, Schalansky's motion for reconsideration (Doc. 54) is denied.

IT IS SO ORDERED.

Dated this   2nd   day of March 2006, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE